UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND DURAN, | Case No.: 1:12-cv-01922 LJO GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| K. ALLISON, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a judgment of the Superior Court of California, County of Tulare, following his conviction by jury trial on April 29, 2009, of second degree murder with a weapon use enhancement. On May 28, 2009, Petitioner was sentenced to serve an indeterminate term of fifteen years to life.

Petitioner timely filed a notice of appeal. On November 3, 2010, the California Court of Appeal, Fifth Appellate District ("Fifth DCA"), affirmed the judgment. Petitioner then filed a petition for review in the California Supreme Court. On January 12, 2011, the petition was summarily denied. Petitioner then filed a habeas petition in the California Supreme Court. That petition was denied on

1

January 4, 2012.

On November 21, 2012, Petitioner filed the instant federal habeas petition in this Court. The petition presents the following three claims: (1) Petitioner alleges defense counsel rendered ineffective assistance by failing or refusing to move to suppress Petitioner's involuntary confession; (2) Petitioner claims appellate counsel rendered ineffective assistance by failing to raise the previous claim on direct appeal; and (3) Petitioner alleges the trial court erred by failing to investigate further into the reasons why Petitioner sought to represent himself. On April 30, 2013, Respondent filed an answer to the petition. Petitioner did not file a traverse.

## STATEMENT OF FACTS[1]

On July 25, 2007, the initial complaint was filed. Appellant was arraigned and the public defender was appointed to represent him.

On August 6, 2007, appellant entered a not guilty plea. The preliminary hearing was set for September 17, 2007.

After two continuances, the preliminary hearing was held on January 7, 2008.

On January 22, 2008, appellant was arraigned on the original information. Trial was set for May 6, 2008.

Defense counsel filed a written motion to continue the trial. It was granted over the People's objection. Trial was reset for August 6, 2008.

On July 18, 2008, the People filed the amended information, which added the lying-in-wait special circumstance allegation. The trial date was vacated.

Defense counsel was granted a continuance to investigate the new allegation. Trial was reset for January 13, 2009.

On January 5, 200[9], defense counsel filed a written motion to continue the trial because a new public defender had been assigned to the case. The motion was granted and trial was reset for April 21, 2009.

On April 14, 2009, defense counsel filed a written motion to continue the trial because he needed additional preparation time. It was heard and denied without prejudice during the pretrial hearing on April 15, 2009.

On Monday, April 20, 2009, the parties appeared before Judge Reed to be assigned to an open department for trial. During this appearance, defense counsel orally renewed his motion for a trial continuance. Following local protocol, Judge Reed heard and ruled on this motion.

---

[1] The Fifth DCA's summary of the facts in its November 3, 2010, opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Petitioner does not present clear and convincing evidence to the contrary; thus, the Court adopts the factual recitations set forth by the Fifth DCA.

Defense counsel stated he wanted a continuance because he had revised his trial strategy. During investigation of the case prior to the last continuance, the defense had discovered "several prior incidents of violence by the victim over in the Bay Area." Defense counsel said he had not planned to introduce evidence about these acts because it would allow the prosecutor to introduce evidence of appellant's prior violent acts. Defense counsel stated that when he made this tactical decision, he incorrectly thought appellant had been involved in a prior criminal incident that resulted in a juvenile adjudication for armed robbery. However, he recently realized that the incident resulted in a juvenile adjudication for a lesser offense. Therefore, defense counsel had decided to revise his trial strategy to include evidence of the victim's prior violent acts. Defense counsel explained, "I'm not completely sure on my theory of allowing the victim's prior acts in buffering my client's acts, but I believe I do have a theory that would work to make it advantageous for me to call those witnesses at trial." He requested a continuance sufficient to allow him to provide discovery and subpoena witnesses who would testify about the victim's prior violent acts. Defense counsel acknowledged that he was given pertinent discovery about appellant's criminal record in December 2008.

The prosecutor argued that if defense counsel presented evidence about the victim's prior violence, he would have an opportunity to bring out the facts and circumstances of appellant's prior violent crime, regardless of the actual adjudication offense. Therefore, defense counsel's realization was not strategically significant.

The trial court found good cause for a continuance had not been shown and denied the motion.

Immediately thereafter, defense counsel stated, "Judge, we do have what I would like to describe as maybe a Marsden issue."

Outside the presence of the prosecutor, the court asked appellant what he wanted to bring forward to the court. Appellant said he would like "to go pro per."

The court attempted to ascertain whether appellant wanted a different attorney appointed or wanted to represent himself.

Defense counsel stated: "To clarify, it was brought to my attention that he didn't want me to be his lawyer, necessarily, and wanted to discuss that possibility of pro per along with that."

The court asked appellant if he wanted to represent himself or if he wanted a different attorney.

Appellant and defense counsel held a discussion off the record.

Then appellant said, "I want to request to remove my attorney from my case. I feel that we're not ready to take it to trial. I feel that there's more to be done. I really don't feel comfortable with the investigation that he's doing. I just don't feel comfortable."

Defense counsel stated that he had worked with appellant "this last couple weeks to bring him up to speed to be trial ready." It appeared to defense counsel that appellant "doesn't feel like he or the case is ready to go to trial."

Defense counsel also stated that he was an experienced trial attorney and it was a "close call" whether additional investigation about the victim's history for violence "would make a difference." In all other respects, his investigation was complete and he was ready for trial.

The court asked appellant if he had any additional comments; appellant replied in the

negative.

Then the court denied the Marsden motion.

The prosecutor returned to the courtroom. The court stated that it was handing the file to counsel to travel to department 7 for trial assignment.

Defense counsel said, "The pro per issue?"

The court asked appellant if he wanted to make a motion for self-representation and appellant replied affirmatively.

The court asked appellant to explain "exactly what it is that you wish to do at this point." Appellant replied:

> "I just-I would like the opportunity to represent myself. I feel that there are certain things that I can do that would help me out in my case.
>
> I just-I want to experience my case and do a little bit of investigation myself. And I just ask that I would like that opportunity to represent myself."

The court ascertained from appellant and defense counsel that no prior Faretta motions had been brought in this case.

The court asked appellant if he was ready to move forward with the trial as scheduled and appellant replied that he was not ready.

The court set forth the case's procedural history and it found that the quality of representation being provided by defense counsel was "more than sufficient."

Then the court asked appellant if he wished "to make known why you are making this request to me now as opposed to in a more timely occasion."

Appellant started to reply but defense counsel interrupted to "lay a little background that approximately three or four weeks ago his family was attempting to hire a private lawyer, and it never-I tried to accelerate that process-"

The court stopped defense counsel and directed appellant to personally explain why he was "making this request to me now, as opposed to earlier?"

Appellant replied, "Okay. Like [defense counsel] was saying, my family a few weeks back was trying to hire a lawyer. I don't know exactly if they're going to be able to do or when they're going to be able to do. [¶] I would like to go pro per until I can see-"

The court asked, "Are you just using this as a way to buy some time to see if your family can hire you a lawyer?"

Appellant replied, "No, ma'am. I-I'm using this because I feel I would like to represent myself, like I told you."

Then the court ascertained from appellant that he only wanted to waive counsel if the court also continued the trial. If the court would not grant a continuance, appellant wanted to be represented by counsel.

The prosecutor argued the self-representation request was untimely.

4

Then defense counsel stated that he did not believe appellant was prepared to represent himself with the current trial date, "and that would not suit justice in any way at all. And barring that, I don't know that there's anything else really I could add other than the family has been trying, but the fire I tried to light under them didn't produce, because I was afraid of the same timetable problems."

The court stated, "Well, it is clear that defendant is not ready, well, and able to represent himself today at the motions in limine and at trial tomorrow."

The court ascertained from defense counsel that the Faretta request "also carries with it" a request to continue the trial.

Then the court denied the motion, as follows:

"And I do find that the request is not timely and not reasonable based on the eve of trial upon which the request is being made, the quality of representation afforded to the defendant previously, and the Court's finding that this request is sounding to be an opportunity to buy time so that the defendant can have his family perhaps obtain private counsel.

"And the Court is gravely concerned about the numerous delays that have previously occasioned in this case and for all of those reasons does find the request untimely and unreasonable and denies the request."

(Resp't's Answer, Ex. A.)

## DISCUSSION

I.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of Tulare County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.   Standard of Review

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred

1  unless a petitioner can show that the state court's adjudication of his claim:

2      (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

4      (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

5  28 U.S.C. § 2254(d); Harrington v. Richter, __ U.S. __, __, 131 S.Ct 770, 784, 178 L.Ed.2d 624

6  (2011); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 413.

7      As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal

8  law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28

9  U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look

10 to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the

11 relevant state-court decision." Williams, 592 U.S. at 412. "In other words, 'clearly established Federal

12 law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at

13 the time the state court renders its decision." Id. In addition, the Supreme Court decision must

14 "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a

15 new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is

16 no clearly established Federal law for purposes of review under AEDPA. Moses v. Payne, 555 F.3d

17 742, 754 (9th Cir.2009) (quoting Wright v. Van Patten, 552 U.S. 120, 125 (2008)); Panetti v.

18 Quarterman, 551 U.S. 930 (2007); Carey v. Musladin, 549 U.S. 70 (2006). If no clearly established

19 Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision.

20 Carey, 549 U.S. 70; Wright, 552 U.S. at 126; Moses, 555 F.3d at 760.

21     If the Court determines there is governing clearly established Federal law, the Court must then

22 consider whether the state court's decision was "contrary to, or involved an unreasonable application

23 of," [the] clearly established Federal law." Lockyer, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)).

24 "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a

25 conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court

26 decides a case differently than [the] Court has on a set of materially indistinguishable facts."

27 Williams, 529 U.S. at 412-13; see also Lockyer, 538 U.S. at 72. "The word 'contrary' is commonly

28 understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'"

Williams, 529 U.S. at 405 (quoting Webster's Third New International Dictionary 495 (1976)). "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir.2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Lockyer, 538 U.S. at 75-76. The writ may issue only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Harrington, 131 S.Ct. at 784. In other words, so long as fairminded jurists could disagree on the correctness of the state courts decision, the decision cannot be considered unreasonable. Id. If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See LaJoie v. Thompson, 217 F.3d 663, 669 (9th Cir.2000); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires considerable deference to the state courts. "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," and "evidence introduced in federal court has no bearing on 2254(d)(1) review." Cullen v. Pinholster, __

U.S. __, __, 131 S.Ct. 1388, 1398-99 (2011).  "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)).  However, a state court factual finding is not entitled to deference if the relevant state court record is unavailable for the federal court to review.  Townsend v. Sain, 372 U.S. 293, 319 (1963), *overruled by*, Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992).

III.   Review of Claims

   A.  Ineffective Assistance of Trial Counsel

Petitioner first claims his defense counsel rendered ineffective assistance by failing or refusing to move to suppress his involuntary confession.

This claim was first presented in Petitioner's habeas petition to the California Supreme Court.  It was summarily denied on January 4, 2012.  Federal courts review the last reasoned state court opinion.  Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991).  However, in cases such as this where the state court decided an issue on the merits but provided no reasoned decision, federal courts conduct "an independent review of the record . . . to determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000), *abrogated on other grounds*, Lockyer, 538 U.S. at 75-76; see also Harrington, 131 S.Ct. at 784 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."); Cullen, 131 S.Ct. at 1402 ("Section 2254(d) applies even where there has been a summary denial.")

The law governing ineffective assistance of counsel claims is clearly established.  Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors.  Harrington, 131 S.Ct. at 787; Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that "counsel's representation fell below an objective standard of reasonableness," and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances.

1  Harrington, 131 S.Ct. at 787 (citing Strickland, 466 U.S. at 688); United States v. Quintero-Barraza,
2  78 F.3d 1344, 1348 (9th Cir. 1995).  Petitioner must show that counsel's errors were so egregious as to
3  deprive defendant of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  Judicial
4  scrutiny of counsel's performance is highly deferential.  A court indulges a "'strong presumption' that
5  counsel's representation was within the 'wide range' of reasonable professional assistance."
6  Harrington, 131 S.Ct. at 787 (quoting Strickland, 466 U.S. at 687); Sanders v. Ratelle, 21 F.3d 1446,
7  1456 (9th Cir.1994).
8      Second, the petitioner must demonstrate prejudice, that is, he must show that "there is a
9  reasonable probability that, but for counsel's unprofessional errors, the result ... would have been
10 different," Strickland, 466 U.S. at 694.  "It is not enough 'to show that the errors had some
11 conceivable effect on the outcome of the proceeding.'" Harrington, 131 S.Ct. at 787 (quoting
12 Strickland, 466 U.S. at 693).  "Counsel's errors must be 'so serious as to deprive the defendant of a
13 fair trial, a trial whose result is reliable.'" Harrington, 131 S.Ct. at 787-788 (quoting Strickland, 466
14 U.S. at 687).  A court need not determine whether counsel's performance was deficient before
15 examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland,
16 466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not
17 result in prejudice must necessarily fail.
18      Establishing that a state court's application of Strickland was unreasonable under 28 U.S.C. §
19 2254(d) is very difficult.  Harrington, 131 S.Ct. at 788.  Since the standards created by Strickland and §
20 2254(d) are both 'highly deferential,' when the two are applied in tandem, review is 'doubly' so.
21 Harrington, 131 S.Ct. at 788 (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)).
22      In this case, Petitioner claims counsel failed or refused to move to suppress his confession
23 which he maintains was involuntarily made in violation of Miranda v. Arizona, 384 U.S. 436 (1966).
24 Petitioner fails to demonstrate that counsel erred or that Petitioner suffered any prejudice from
25 counsel's alleged error.  The prosecution did not introduce any statements from Petitioner's
26 confession, and Petitioner does not point to anywhere in the record where such evidence was used
27 against him.  Therefore, counsel did not err because counsel cannot be faulted for failing to make a
28 groundless motion.  James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994).  Nor did Petitioner suffer any

1 prejudice since the challenged evidence was never introduced.  Thus, Petitioner fails to prove that the
2 state court rejection of his claim was unreasonable.  The claim should be denied.

### B.  Ineffective Assistance of Appellate Counsel

Petitioner next contends his appellate counsel rendered ineffective assistance for failing to raise on direct appeal the same claim he raised above.  This claim was also presented by habeas petition to the California Supreme Court where it was summarily rejected.  Accordingly, this Court must determine whether the state court's decision was objectively unreasonable.  Delgado, 223 F.3d at 982.

Claims of ineffective assistance of appellate counsel are also reviewed according to Strickland's two-pronged test.  See, e.g., Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986).  In this case, for the same reasons discussed above, appellate counsel did not commit error since the evidence Petitioner complains of was never introduced.  Appellate counsel cannot be faulted for failing to make a groundless claim.  Shah v. United States, 878 F.2d 1156, 1162 (9th Cir.1989) (failure to raise a meritless legal argument does not constitute ineffective assistance of counsel); Cooper v. Fitzharris, 551 F.2d 1162, 1166 (9th Cir.1977).  Therefore, the state court rejection of this claim is not objectively unreasonable.  The claim should be denied.

### C.  Trial Court Failure to Investigate

In his final claim for relief, Petitioner alleges the trial court failed to investigate further into Petitioner's reasons for wanting to represent himself.  Had it done so, Petitioner contends, the trial court would have discovered defense counsel's failure to move for suppression of the involuntary confession.

Like the previous claims, this claim was presented by habeas petition to the California Supreme Court where it was summarily rejected.  To merit relief, Petitioner must demonstrate that there was no reasonable basis for the state court's rejection.

Respondent correctly argues that there is no Supreme Court precedent which requires a trial court to independently investigate the reasons provided by a defendant for substitution of counsel.  For this reason, Petitioner cannot demonstrate that the state court rejection of his claim was contrary to, or involved an unreasonable application of, Supreme Court authority.

In addition, any claim that the trial court failed to conduct an adequate inquiry also fails. Whenever a defendant expresses dissatisfaction with his attorney and seeks a substitution, a trial court must conduct an inquiry to determine whether the defendant is being deprived of the effective assistance of counsel. Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir.2000) (citing Smith v. Lockhart, 923 F.2d 1314, 1320 (8th Cir.1991). The inquiry must be such "as might ease the defendant's dissatisfaction, distrust and concern." Hudson v. Rushen, 686 F.2d 826, 829 (9th Cir.1982). In this case, the trial court conducted an adequate inquiry. The court asked Petitioner for his reasons for dissatisfaction with his attorney. Petitioner responded that he "really [didn't] feel comfortable with the investigation that he's doing." (Petition at 11.) The court then asked defense counsel to respond, and counsel stated it was a "close call" whether further investigation into Petitioner's history of violence would make a difference, but in all other respects the investigation was complete. (Resp't's Answer, Ex. A.) Petitioner was asked whether he had any additional comments, and he replied in the negative. The inquiry was not inadequate. Petitioner was given ample opportunity to provide the reasons for his motion. Indeed, Petitioner admits in his petition that "he could not properly explain to the court what his counsel had failed to do." (Petition at 13.)

In any case, even if the subject of the involuntary confession had been raised, and the court had been presented with Petitioner's argument that defense counsel failed to move to suppress the confession, the motion for new counsel would still have been denied since counsel had no duty to raise a groundless motion. As previously discussed, the confession was not introduced into evidence. There was simply no basis for counsel to move for suppression and therefore no basis for Petitioner's dissatisfaction with counsel's representation concerning the confession. The instant claim is without merit and should be denied.

### RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that this action be DENIED WITH PREJUDICE.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within

1  thirty (30) days after service of the Findings and Recommendation, any party may file written
2  objections with the court and serve a copy on all parties.  Such a document should be captioned
3  "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be
4  served and filed within fourteen (14) days after service of the objections.  The Court will then review
5  the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that
6  failure to file objections within the specified time may waive the right to appeal the District Court's
7  order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

11  IT IS SO ORDERED.

12  Dated:    **June 11, 2013**                              **/s/ Gary S. Austin**
13                                                           UNITED STATES MAGISTRATE JUDGE